UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| BRAND ENERGY SOLUTIONS, LLC, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| versus ) | Civil Action No. |
| ) | |
| CODY GILLEY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**VERIFIED COMPLAINT AND APPLICATION FOR A PRELIMINARY INJUNCTION**

COMES NOW Plaintiff Brand Energy Solutions, LLC ("Brand"), by and through its attorneys, by way of this Verified Complaint as supported by the attached Declaration of Mike Fugitt, in the above-styled action and alleges as follows:

**Nature of the Action**

1. Brand brings this action against its former employee, Cody Gilley ("Gilley"). Brand employed Gilley in a position of trust as Project Manager over Brand operations in the Lake Charles region, and granted him access to Brand's confidential, proprietary and trade secret information and valuable business relationships, all subject to the Confidentiality, Non-Competition, Non-Solicitation, and Invention Assignment Agreement ("Agreement") between Gilley and Brand.

2. In exchange for access to Brand's confidential information, Gilley agreed to protect Brand's information and relationships, including by not competing with Brand for one year after separation from employment in a limited geographical area. In violation of Brand's trust and in

breach of his agreement with Brand, Gilley left Brand's employ and immediately began employment with a direct competitor of Brand.

3. Brand brings this action for damages and injunctive relief based on Gilley's breach of contract including of the non-competition and non-solicitation provisions of the Agreement between Gilley and Brand.

## Parties, Jurisdiction, and Venue

4. Brand is a Delaware corporation with its principal place of business in Georgia. It is registered to do business in the State of Louisiana. Companies in the Brand Energy Solutions corporate family have been doing business in Louisiana since the 1960's.

5. Gilley is a person of the full age of majority and a resident of Calcasieu Parish, Louisiana who, upon information and belief, may be served at 302 S Gate St., Sulphur, Louisiana 70665.

6. Gilley is currently employed by Apache Industrial Services in the Lake Charles, Louisiana area. Upon information and belief, Gilley may be served at Apache Industrial Services' offices located at 3426 Highway 90, Westlake, Louisiana 70669.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), which provides, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States…" The parties to this action are citizens of different states and the amount in controversy exceeds $75,000. In the Fifth Circuit, "when a party seeks injunctive relief, the amount in controversy is measured by the value of the object of the litigation. The object of the litigation is either the value of the right sought to be protected or the extent of the injury sought to be prevented." *Williams v. Axiall Corp.*, No. 2:15-cv-440, 2015

WL 5638080, at *4 (W.D. La. Sept. 24, 2015). In this case, the value of Brand's lost sales revenue because of Gilley's employment with Apache and the value of the future effect of Gilley's breach of the Agreement based on Brand's revenue from its customers in the Lake Charles area from July 1, 2015 through July 11, 2016, far exceed $75,000 and thus this matter is properly before this Court pursuant to 28 U.S.C. § 1332(a). *See Premier Indus. Corp. v. Tex. Indus. Fastener Co.*, 450 F.2d 444, 447 (5th Cir. 1971).

8. Venue is proper in this Court as Defendant resides in this judicial district and a substantial part of the events giving rise to these claims occurred in this judicial district, and because the Agreement was executed in Calcasieu Parish and service was performed and/or was to be performed under the terms of the Agreement in Calcasieu Parish.

## FACTS
### Brand's Operations

9. Brand provides specialty craft services to the offshore, marine, petrochemical and power industries, and provides the following products and services: painting and industrial coating, metallizing, insulation and fireproofing, asbestos and non-asbestos abatement, refractory services, concrete sealing, tank lining, carpentry and the manufacturing, designing, marketing, renting, selling and assembling of scaffolding, temporary work platforms, and the designing, marketing, selling, renting, and assembling of concrete forming and shoring equipment and other construction-related products and services. (Exhibit A, Declaration of Mike Fugitt, ¶ 3).

10. Brand carries on its business throughout substantial parts of, *inter alia,* Louisiana and Texas, including the Lake Charles/Sulphur area of Louisiana in the Parishes of Calcasieu and Cameron and the Beaumont/Orange and Port Arthur area of Texas, including Orange County, Texas. (Exhibit A, ¶ 2).

**Brand Employs Gilley and Promotes Him to Project Manager**

11.     Gilley was employed by Brand in the Lake Charles, Louisiana area from September 28, 2011, until his voluntary resignation on April 25, 2016. (Exhibit A, ¶ 4).

12.     Effective December 22, 2014, Gilley was promoted to the position of Project Manager in Brand's Lake Charles region. In addition to a substantial salary increase, in connection with his promotion to Project Manager Gilley also received a retention bonus and eligibility for annual incentive compensation. (Exhibit A, ¶ 5).

13.     Ancillary to and as a part of Gilley's promotion to Project Manager, Gilley executed a Confidentiality, Non-Competition, Non-Solicitation and Invention Assignment Agreement ("Employment Agreement" or "Agreement"), attached hereto as Exhibit B, more fully described below. (Exhibit A, ¶ 5).

**Gilley's Job Duties as Project Manager**

14.     As Project Manager, Gilley was primarily responsible for Brand's customer relationships in the Lake Charles area, including developing new business, managing current business, and overseeing all aspects of the jobs assigned to him, which included most of the jobs contracted out of Brand's Lake Charles office. Gilley's responsibilities included such areas as safety, cost, profitability, scheduling, staffing, specific contract terms, forecasting, team dynamics, project risks and risk mitigation, customer needs, managing customer relationships and expectations, and customer satisfaction. (Exhibit A, ¶ 6).

15.     The locations where Gilley performed his job duties as Project Manager for Brand during the last year of his employment included Calcasieu and Cameron Parishes in Louisiana and Orange County in Texas. (Exhibit A, ¶ 7).

16.     As Project Manager for Brand, Gilley oversaw jobs for, and was thus responsible for

Brand's business relationships with, customers including Lyondell-Lake Charles, Indorama, Firestone, Stingray Pipeline Co., Pat Williams Construction, Shell, Axiall South, Sasol, Phillips 66, and Citgo. (Exhibit A, ¶ 8).

### Gilley Agrees to Not Compete with Brand for One Year Following his Employment with Brand

17. The Agreement which Gilley executed as a condition of receiving his promotion to Project Manager required him to: 1) not accept employment by any competitor of Brand in the described restricted geographical area ("Restricted Area"), including Calcasieu and Cameron Parishes in Louisiana and in Orange County in Texas, for a period of one year following the termination of his employment with Brand ("Restricted Period"); and 2) not provide competitive services to, or attempt to divert Brand business away from, any Brand customers in the Restricted Area during the Restricted Period; (*See, e.g.*, Exhibit B, and §§ 3, 4 *infra*).

### Gilley Resigns his Employment with Brand to Accept a Position with Brand's Competitor, Apache Industrial Services, in Violation of his Employment Agreement

18. From April 18 through April 22, 2016, Gilley took vacation time and was not at work. (Exhibit A, ¶ 9).

19. Gilley left his Brand-issued computer, truck, and keys at his office sometime between Friday, April 22, and Monday, April 25, 2016. (Exhibit A, ¶ 9). Gilley did not provide a two-week notice, or indeed any notice at all; he simply left his truck, keys and computer at the branch office without disclosing he was going to work for Apache. (*Id*.).

20. On Monday, April 25, 2016, Gilley ended his employment with Brand, by simply not showing up to work, with no explanation and no notice. (Exhibit A, ¶ 9).

21. Brand learned on April 25, 2016 that Gilley accepted employment with a direct competitor of Brand's, Apache Industrial Services ("Apache"), in the Lake Charles, Louisiana

5

area. (Exhibit A, ¶ 10). Said location is in the Restricted Area where Gilley agreed not to compete with Brand during the year following his separation. (*Id*.).

22. Like Brand, Apache provides specialty craft services to the marine, petrochemical and power industries including in southwest Louisiana. (*See* http://www.apacheip.com/industries-served/). Apache is a direct competitor of Brand, providing such services, for example, as coatings, fireproofing, painting, insulation, abatement, maintenance, metallizing, refractory and scaffolding. (*See* http://www.apacheip.com/careers/).

23. Brand's Regional Vice President, Mike Fugitt, sent a text message to Apache's Vice President of Operations, Scott Thibodeaux that he heard Apache was hiring a manager from Brand, and notified Thibodeaux that the manager in question was "under contract." (Exhibit A, ¶ 14). Mr. Thibodeaux claimed in his response to Mr. Fugitt that Apache had not hired a manager from Brand, yet Gilley remains employed with Apache as a Project Manager in violation of his Agreement with Brand. (*Id*.).

## Brand Loses Work to Apache

24. Since Gilley left Brand's employment, Brand learned that Apache obtained work for Brand's customer Lyondell-Lake Charles. (Exhibit A, ¶ 11).

25. Lyondell was a Brand customer in the Lake Charles, Louisiana area, with whom Gilley worked on behalf of Brand. (Exhibit A, ¶ 11).

26. Prior to Gilley joining Apache, Apache had not within the past 12 months performed any work for Lyondell-Lake Charles. (Exhibit A, ¶ 11).

27. Indorama was also a Brand customer in the Lake Charles, Louisiana area with whom Gilley worked on behalf of Brand. (Exhibit A, ¶ 12).

28. Prior to Gilley joining Apache, Brand provided the scaffolding services for Indorama.

Since Gilley joined Apache, Apache is now providing scaffolding services to Indorama; Brand no longer provides such services to Indorama. (Exhibit A, ¶ 12).

29. Upon information and belief, Apache's work for Lyondell-Lake Charles and Indorama was the result of Gilley's unlawful competition in violation of his Employment Agreement with Brand. (Exhibits A, B).

## Brand is Entitled to Injunctive Relief

30. Gilley's current employment in the Restricted Area as a Project Manager for Apache, a direct competitor of Brand, violates the non-compete provision of the Agreement between Gilley and Brand.  (*See* Exhibit B, § 3).

31. The non-compete provision of the Agreement between Gilley and Brand complies with La. R.S. § 23:921(C).  Accordingly, pursuant to La. R.S. § 23:921(H), Brand is entitled to injunctive relief in the form of a Preliminary Injunction prohibiting Gilley's continued violation of his Employment Agreement with Brand and, specifically ordering him to cease competing with Brand in the Louisiana Parishes of Calcasieu and Cameron and the Texas County of Orange, where Gilley performed his job duties as Project Manager during the last year of his employment with Brand.

## The Terms of Gilley's Agreement with Brand

32. Section 3 of the Agreement, entitled "Non-Competition Agreement," provides in pertinent part:

> (a) During employment with the Company and **for a period of one (1) year after the voluntary or involuntary termination of Manager's employment** with the Company for any reason, **Manager shall not**, directly or indirectly, **whether as** a partner, investor, **employee**, team member, consultant, creditor, shareholder **or otherwise, carry on or engage in business similar to that of the Company, such as by becoming employed by, assisting or engaging in bid development or customer**

7

        **solicitation for**, promoting, participating, assisting or engaging in the organization, engineering, planning, consultation, ownership, financing, management, operation, work or control of **any corporation**, partnership. association, or other person or entity **that directly competes with** or is planning to directly compete with **the Company** (or otherwise provides products or services similar to those provided by the Company) in the Restricted Area (as defined herein) in the business of providing products and services of painting and industrial coating, metallizing, insulation and weatherproofing, asbestos and non-asbestos abatement, refractory services, concrete sealing, tank lining, carpentry and the manufacturing, designing, marketing, renting, selling and assembling of scaffolding, temporary work platforms, and the designing, marketing, selling, renting, and assembling of concrete forming and shoring equipment and other construction-related products and services.

(b)    As used in this Agreement, the "Restricted Area" is every county, city, municipality, parish or other locality within Canada or the United States, or any other country, including the Louisiana parishes of Acadia, Ascension, Assumption, Avoyelles. Caddo, Calcasieu, Cameron, East Baton Rouge, East Feliciana, Iberia, Iberville, Jefferson, Lafourche, Lafayette, Livingston, Orleans, Plaquemines, Point Coupee, Rapides, St. Bernard, St. Charles, St. Helena, St. James, St. John, St. Landry, St. Martin, St. Mary. St. Tammany, Tangipahoa, Terrebonne, Vermillion, Washington, West Baton Rouge and West Feliciana; the Mississippi counties of Adams, Amite, Covington, Franklin, Forrest, George, Greene, Hancock, Harrisson [sic], Jackson, Jefferson Davis, Jones, Lamar, Lawrence, Lincoln, Marrion, Pearl River, Perry, Pike, Stone, Walthall, Wayne, and Wilkinson; the Alabama counties of Baldwin, Clarke, Coffee, Conecuh, Dale, Escambia, Geneva, Henry, Houston, Mobile, Monroe, and Washington; the Florida counties of Escambia and Santa Rosa; the Texas counties of Aransas, Austin, Bee, Bexar, Brazoria, Calhoun, Chambers, Colorado, Dewitt, Fayette, Fort Bend, Galveston, Goliad, Gonzales, Grimes, Guadalupe, Hardin, Harris, Jackson, Jasper, Jefferson, Karnes, Kennedy, Kleberg, Lavaca, Liberty, Matagora, Montgomery, Newton, Nueces, Orange, Polk, Refugio, San Jacento, San Patricio, Tyler, Victoria, Waller, Washington, Wharton, and Wilson, all as long as the Company carries on therein a business like the business described in this Agreement, wherein the Company sold, rented or provided, or attempted to sell, rent or provide its products or services, that were within Manager's management, operational or sales responsibility or within the responsibility of personnel directly reporting to

> Manager, at any time during the last one (1) year of Manager's employment with the Company.

33. Section 4 of the Agreement, entitled "Non-Solicitation Agreement," provides for Gilley's agreement, for a period of one year after separating from Brand, not to do business with or divert business away from Brand customers in the Restricted Area, as follows:

> During employment with the Company and for a period of one (1) year after the voluntary or involuntary termination of Manager's employment with the Company, Manager shall not, directly or indirectly, on his or her own behalf or on behalf of any third party…
>
> (b) in the Restricted Area, sell, rent, provide or attempt to sell, rent, or provide any products or services in competition with or similar to those products or services which the Company sold, rented or provided, or attempted to sell, rent or provide, during Manager's employment at the Company, to: (i) any person, company or other entity to whom Manager sold, rented, provided or attempted to sell, rent, or provide such Company products or services at any time during the last one (1) year of Manager's employment with the Company, or (ii) any person, company or other entity about whom Manager received Confidential Information while employed by the Company, or (iii) any person, company or other entity with whom Manager had contact designed to establish, continue or strengthen a business relationship during the last one (1) year of Manager's employment with the Company.
>
> (c) in the Restricted Area, divert away from the Company current, former or potential customers of the Company to whom Manager sold, rented, provided or attempted to sell, rent or provide the Company's products or services at any time during the last one (1) year of Manager's employment at the Company, or about whom Manager received Confidential Information while employed by the Company, or with whom Manager had contact designed to establish, continue or strengthen a business relationship during the last one (1) year of Manager's employment at the Company, nor seek to induce or encourage such customers to modify or not renew their business relationship with the Company.

34. Further, the Agreement contains a "Savings and Severability Clause," which states as follows:

> (a) Nothing contained in this Agreement shall be construed to require the commission of any act contrary to law, and whenever there is any conflict between any provision of this Agreement and any

        present or future statute, law, government regulation or ordinance contrary to which the parties have no legal right to contract, the latter shall prevail, but in such event the provisions of this Agreement affected shall be curtailed and restricted only to the extent necessary to bring them within legal requirements.

    (b)    The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity and enforceability of the other provisions hereof. If any one or more of the provisions of this Agreement shall for any reason be held to be excessively broad as to time, duration, geographical scope, activity, or subject, each such provision shall be construed by limiting and reducing, or by modifying it, so as to be enforceable to the extent compatible with applicable law then in force.

35. Moreover, as to all of the provisions of the Agreement, in Section 8 Gilley expressly agreed:

    "that in the event of any threatened, intended or actual breach of this Agreement …, the Company will suffer irreparable damage, the exact amount of which may be impossible to ascertain, and for which the remedy at law would be inadequate, and for those reasons [Gilley] further agrees that the Company shall be entitled, in addition to reasonable attorneys' fees, costs and remedies otherwise available to the Company at law or in equity, to injunctions, both preliminary and final, enjoining and restraining such threatened, intended or actual breach, and [Gilley] irrevocably consents to the issuance of such injunctive relief by any court of competent jurisdiction."

36. Gilley further agreed that if he violated the Agreement, "the non-competition and non-solicitation period will run from the date on which the violation of the Agreement ceases, whether by injunction or otherwise, and not from the date" of termination from employment with Brand. (Exhibit B, § 8).

37. As to the entire Agreement, Gilley agreed to the following in Section 18 of the Agreement, regarding the effect of his signature:

    By the signing of this Confidentiality, Non-competition, Non-solicitation and Invention Assignment Agreement, [Gilley]:

      (a) acknowledges and agrees that the restrictions contained within this Agreement are reasonable and necessary for the protection of the goodwill, business, Trade Secrets, Confidential Information and customer relationships of the Company and that the Company will suffer irreparable injury if [Gilley] engages in conduct prohibited hereby; and

      (b) represents that the observance of the covenants set forth herein will not cause [Gilley] any undue hardship nor will it unreasonably interfere with [Gilley] 's ability to earn a livelihood either during or following [Gilley] 's employment with the Company; and

      (c) acknowledges and understands that the Agreement creates important obligations of trust and affects the [Gilley] 's rights to inventions and other intellectual property [Gilley] may develop during his or her employment; and

      (d) signifies that [Gilley] has fully read , completely understands, and voluntarily agrees with this Agreement and knowingly and voluntarily accepts all of its terms and conditions.

(Exhibit B, § 18).

38. The parties agreed that the Agreement is to be construed under Louisiana law, and "<u>whenever possible each provision is to be interpreted in such matter as to be effective or valid</u> under applicable law." (Exhibit B, § 14).

## COUNT 1:
## Breach of Agreement Not to Compete

39. Brand adopts, realleges, and incorporates all allegations set forth above as if fully restated herein.

40. The Agreement between Brand and Gilley constitutes a valid and enforceable contract.

41. The Agreement provides that Gilley will not accept employment by a direct competitor of Brand within the proscribed geographic areas set forth in the Agreement for a period of one year from the date of the termination of this employment by Brand, or if he violates the Agreement, for one year from the date he ceases breaching his noncompetition obligation.

42. The Louisiana statute governing noncompetition agreements unambiguously directs that

"<u>every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, *shall be enforceable*</u>." La. R.S. § 23:921(A)(1) (emphasis added).

43. Under Louisiana law, an agreement meets the exception in the statute and "shall" be enforced, where an employee agrees "with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment." La. R.S. § 23:921(A)(1) and (C).[1]

44. To be valid under Louisiana law, a non-competition agreement must be limited in geographic scope to specified parishes where the employer carries on a like business with the competitor, and must be limited in time not to exceed a period of two years from termination of employment. La. R.S. § 23:921(C); *Innovative Manpower Solutions, LLC v. Ironman Staffing, LLC*, 929 F. Supp. 2d 597, 616 (W.D. La. 2013).

45. The Louisiana Supreme Court repeatedly has directed courts to use savings and severability clauses agreed to by the parties in interpreting noncompetition contracts, and to strike overbroad language when doing so can result in an enforceable agreement under Louisiana law.[2]

---

[1] La. R.S. § 23:921( C) provides in pertinent part as follows: "Any person … who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment."

[2] *See, e.g., SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La. 6/29/01), 808 So. 2d 294, 308-9 (the Court stating it acted consistently with parties' intent by relying on severability clause to strike otherwise overbroad portions of noncompetition agreement and render it enforceable), *superseded by statute on other grounds*, La. R.S. 23:921(D), *as recognized in Green Clinic, L.L.C. V. Finley*, 30 So. 3d 1094 (2010); *AMCOM of Louisiana, Inc. v. Battson*, 96-319 (La. 3/29/96), 670 So. 2d 1223, *rev'g*, 28,171-CA (La. App. 2 Cir. 1/5/96), 666 So. 2d 1227 (reinstating trial court judgment that excised the

46. Accordingly, the law requires that savings and severability clauses in a contract be applied to the language of a noncompetition agreement to render it enforceable where there otherwise might be concerns regarding overbreadth, and the Louisiana Supreme Court repeatedly has applied this standard to render noncompetition agreements enforceable.

47. Further, the Louisiana noncompetition statute specifically mandates the issuance of injunctive relief without the showing of irreparable harm when a legally compliant agreement not to compete or not to solicit customers has been breached:

> Any agreement covered by Subsection… C [covering employment noncompetition and non-solicitation of customers agreements]… of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, <u>upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction **shall** order injunctive relief enforcing the terms of the agreement.</u>

La. R.S. § 23:921(H) (emphasis added).

48. Gilley's agreement not to compete with Brand is limited to one year from the date of termination of employment (or one year from the date his violation stops, by statute not to extend beyond two years from termination of his Brand employment[3]), and is restricted to a list of Louisiana parishes in which Brand conducts business wherein Gilley had certain responsibilities as a Brand employee, and is thereby enforceable under Louisiana law. To the extent the Court were to find any provisions overbroad, Louisiana law requires that the savings and severability clause must be applied to reform the Agreement to accomplish enforceability if possible.

49. Gilley has violated the terms of the Agreement as evidenced by his employment by a

---

overbroad part of a geographical limitation prohibiting competition "within a seventy-five (75) mile radius of Shreveport or Bossier City, Louisiana" while leaving the compliant part of the provision which prohibited competition within "Shreveport or Bossier City, Louisiana, or in Caddo or Bossier Parishes, Louisiana" to render agreement enforceable).

[3] La. R.S. § 23:921(C), limiting the period of no competition to no more than two years after separation from employment.

direct competitor engaging him to work within the restricted area, in the Louisiana parishes of Calcasieu and Cameron and in Orange County, Texas.

50. Pursuant to La. R.S. § 23:921(H), and as set forth by the terms of the contract Gilley agreed to, Brand is entitled to injunctive relief as well as damages because of Gilley's breach of the terms of the Agreement, along with attorney's fees and costs.

51. As a result of Gilley's conduct, Brand to date has suffered damages in the amount of revenue lost to Apache for work Apache is performing instead of Brand for Lyondell-Lake Charles and Indorama.

52. During Gilley's last year of employment with Brand, Gilley interacted regularly on Brand's behalf with representatives of Brand's customers, Lyondell-Lake Charles and Indorama. During that time Apache did not do business with Lyondell-Lake Charles, and Apache did not provide scaffolding services to Indorama. In the short period of time since Gilley left Brand and joined Apache, Apache has begun to do business with Lyondell-Lake Charles and has performed scaffolding work for Indorama. Upon information and belief, this change of business activity is directly related to Gilley's interaction with representatives of Lyondell-Lake Charles and Indorama on behalf of Apache.

53. Gilley's breach of contract was intentional, willful, wanton, and in complete, reckless disregard for the rights of Brand.

## RELIEF REQUESTED

### Request for Preliminary Injunction And Permanent Injunction

54. Brand adopts, realleges, and incorporates all allegations set forth above as if fully restated herein.

55. Brand seeks preliminary and permanent injunctive relief enjoining Gilley from breaching

and continuing to breach the duties created by the Agreement. Pursuant to La. R.S. § 23:921(H), Brand is entitled to such injunctive relief upon proof of Gilley's breach of his obligation under the non-compete and non-solicitation provisions of the Agreement and without the necessity of proving irreparable injury.

56. Brand also seeks an Order restraining and enjoining Gilley from, and enjoining any other persons or entities acting on his behalf or in active concert with him from enabling or assisting him in:

    a. Working for or providing any services to Apache, its subsidiaries or related companies, or any other competitor of Brand within the following "Restricted Area" set forth in the Agreement for the "Restricted Period" of one year from the date of this Order but not to extend beyond April 24, 2018 (two years after his employment with Brand ended on April 25, 2016):

        i. the Louisiana Parishes of Calcasieu and Cameron; and
        ii. the Texas county of Orange.

    b. Selling, renting, providing or attempting to sell, rent, or provide any products or services in competition with or similar to those products or services which the Company sold, rented or provided, or attempted to sell, rent or provide, during Gilley's employment at the Company, to:

        i. (i) any person, company or other entity to whom Gilley sold, rented, provided or attempted to sell, rent, or provide such Company products or services at any time during the last one (1) year of Gilley's employment with the Company, or (ii) any person, company or other entity about whom Gilley received Confidential Information while employed by the Company, or (iii) any person, company or other entity with whom Gilley had contact designed to establish, continue or strengthen a business relationship during the last one (1) year of Gilley's employment with the Company, all in the Restricted Area during the Restricted Period; and

    c. diverting away from the Company current, former or potential customers of the Company to whom Gilley sold, rented, provided or attempted to sell, rent or provide the Company's products or services at any time during the last one (1) year of Gilley's employment at the Company, or about whom Gilley received Confidential Information while employed by the Company, or with whom Gilley had contact designed to establish, continue or strengthen a business relationship during the last one (1) year of Gilley's employment at the Company, nor seek to induce or encourage such customers to modify or not renew their business

relationship with the Company, all in the Restricted Area during the Restricted Period.

57. Brand further requests compensatory damages, attorneys' fees, and costs, and all other legal or equitable relief available under the law.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Brand requests that judgment be made and entered in its favor and against Gilley as follows:

58. Entry of a preliminary and permanent injunctions as set forth above, prohibiting Gilley from, and prohibiting any other persons or entities acting on his behalf or in active concert with him from enabling or assisting Gilley in working for Apache, its subsidiaries, or any other direct competitor of Brand, soliciting Brand customers, and/or diverting current, former, and/or potential customers away from Brand within the geographic area restricted by the Agreement, including Calcasieu and Cameron Parishes and Orange County, Texas, for a period of one year from the date his breach of the Agreement ceases.

59. An award of compensatory damages to Brand in an amount to be proved at the trial on this matter.

60. An award of other monetary damages allowed by law or equity.

61. An award of all costs and attorneys' fees.

62. Any such other relief as this Court in its judgment deems just and appropriate.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Jennifer L. Englander*
Elvige Cassard, LA #19386
Jennifer L. Englander, LA #29572
701 Poydras Street, Suite 3500
New Orleans, LA  70139
Telephone:  504.648.3840
Facsimile:  504.648.3859

And

Barham Lewis, Pro Hac Vice Forthcoming
SBOT: 12277400
One Allen Center
500 Dallas Street, Suite 3000
Houston, Texas   77002
Telephone: (713) 655-5767
Facsimile:  (713) 655-0020
Email: barham.lewis@ogletreedeakins.com

Attorneys for Petitioner BRAND ENERGY SOLUTIONS, LLC

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed via the Court's Electronic Case Filing System, which provides for service on all counsel of record.  A copy of the foregoing will be hand delivered to the following non-ECF participant:

>Cody Gilley
>302 South Gate Street
>Sulphur, Louisiana   70665

This 12th day of July, 2016.

*/s/ Jennifer L. Englander*