RECEIVED

JAN 1 8 2017

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

BRAND ENERGY SOLUTIONS, LLC, et al          CIVIL ACTION NO. 2:16-1025

VERSUS                                      JUDGE JAMES T. TRIMBLE, JR.

CODY GILLEY                                 MAG. JUDGE KAY

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

### MEMORANDUM RULING

Before the court is "Defendant Cody Gilley's Rule 12(C) Motion for Judgment on the Pleadings" (R. #21) wherein Mr. Gilley moves the Court to dismiss all claims asserted by Brand Energy Solutions, LLC, et al, with prejudice, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Mr. Gilley maintains that the instant lawsuit must be dismissed because the non-compete Agreement is unenforceable. Mr. Gilley alleges the Agreement between Brand Energy Solutions ("Brand"), et al and defendant, which Mr. Gilley allegedly breached, violates Louisiana's strong public policy on restrictions on trade.

### ALLEGATIONS

In their complaint, Brand, et al alleges that upon termination of his employment with Brand, Mr. Gilley began working for Apache Industrial Services, ("Apache"), a direct competitor of Brand.  Mr. Gilley allegedly solicited and obtained work from Brand's customers on behalf of Apache in violation of the Confidentiality, Non-Competition, Non-Solicitation and Invention Assignment Agreement ("Agreement").

1

## **LAW AND ANALYSIS**

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."[1] Rule 12(c) motions are evaluated in the same manner as motions filed under Rule 12(b)(6) in that the plaintiff's allegations are to be accepted as true, and the court construes all reasonable inferences in a light most favorable to the nonmoving party.[2] Judgment on the pleadings is granted where it is beyond doubt that the movant can prove no set of facts in support of his claim that would entitle him to relief, or where material facts are not in dispute, and the movant is entitled to judgment as a matter of law based on the content of the pleadings.[3] Mr. Gilley asserts that he is entitled to judgment on the pleadings as a matter of law.

*Louisiana's law as to non-compete agreements*

In Louisiana, non-compete agreements are deemed to be against public policy. Louisiana Revised Statute 23:921 provides the limited circumstances under which a non-compete clause may be valid:

> Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section shall be null and void.   However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

Subsections C provides the exception(s):

---

[1] Fed. R. Civ. P. 12.
[2] Cameron Par. Sch. Bd. v. State Farm Fire and Cas. Co. 560 F.Supp.2d 485, 487 (W.D. La. 2008).
[3] Caletka v. State Farm Mut. Auto. Ins. Co., 936 F.Supp. 380, 381 (W.D. La. 1996 ) (internal citations omitted).

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

To be valid, a non-compete agreement may limit competition only in a business similar to that of the employer, in a specified geographic area, and for up to two (2) years from termination of employment.[4] "Non-competition clauses are not favored in the law and are strictly construed against the person attempting to limit the competition."[5]

*Geographical restriction*

Mr. Gilley argues that the Agreement fails to fit into the exception because it does not identify with reasonable certainty those areas in which the employer may lawfully prohibit competition. Thus, Mr. Gilley maintains that the Agreement is unenforceable on its face.  The Agreement defines the "Restricted Area" by naming and/or identifying 35 Louisiana parishes, 41 Texas counties, 23 Mississippi counties, 21 Alabama counties and 2 Florida counties.

Mr. Gilley relies on Waguespack v. Medtronic, Inc.,[6] which held that a geographic limitation in an employer-employee non-competition agreement was not "clearly discernible." In Waguespack, Judge James Brady noted that there are two independent requirements as to the geographical limitation: (a) the parishes where competition is restrained must be "specified" within the agreement itself; and (b) a substantive limit requiring non-competition agreements to

---

[4] Acadian Cypress & Hardwood Inc. v. Stewart, 121 So.3d 667, 670 (La.App. 1 Cir. 3/22/13).
[5] Pelican Publishing Co. v. Wilson, 626 So.2d 721, 723 (La.App. 5th Cir. 1993).
[6] 2016 WL 2621969, at *7 (M.D. La. May 6, 2016) appeal dismissed, (June 23, 2016).

3

be "limited in enforcement to parishes where the first employer actually carries on a like business therein."[7] "What is important is that the geographic limitation be express and clearly discernible."[8] The limitation must allow the employee to "know on the front end what his potential restrictions might be and exactly what price he was being called upon to pay in exchange for employment."[9]

In Waguespack, the Employment Agreements restricted the geographic scope of the non-competition clause to (1) "the Louisiana Parishes and/or Municipalities that are included within [Employee's identified Medtronic sales territory … during the last one (1) year of [his] employment with Medtronic," and (2) "the Louisiana Parishes and/or Municipalities that Medtronic engaged in business within and that [Employee's] services … supported during the last one (1) year of [his] employment."[10]

Judge Brady found the geographic limitations to be invalid because they were not "express"; the Employment Agreements did not list or otherwise identify the parishes in which plaintiffs were prohibited from competing. Thus, the geographical limitations were not "clearly discernible" because there was no way for plaintiffs to determine what their potential restrictions would be if they decided to leave their employer in the future. In the instant suit, Brand has specifically identified each parish and county to be included in the Restricted Area.

In Aon,[11] the geographic scope of the agreement provided "whatever parishes, counties and municipalities the Company or Hall carries on such parish, county or municipality" in which

---

[7] Citing Jacob Ecker, Comment,  At the Breaking Point: Adapting Louisiana Louisiana Employment Noncompete Law to the Information Age, 75 LA. L. REV. 1317, 1334-35.
[8] Vartech Sys., Inc. v. Hayden, 951 So.2d 247, 258 (La.Ct.App. 1st 2006).
[9] Aon Risk Servs. of La., Inc. v. Ryan, 807 So.2d 1058, 1062 (La.Ct. App. 4th 2002).
[10]  Waguespack, at *13.
[11] 807 So.2d 1058.

the employer conducted business. The court held the geographic limitation invalid because it failed to inform the employee on the front end (when he signed the agreement) to know exactly what his restrictions would be and what price he would be called upon to pay in exchange for employment.

Gilley argues that the Agreement he signed would restrict him from having (1) virtually any affiliation with any company that (2) carries on a business similar to Brand or any of the 29 Affiliate-Plaintiffs (3) anywhere in the world. Gilley suggests that listing and/or naming the specific counties and parishes "seems to be every locality that a Manager could possibly be involved with, either through actions of the Company, the Manager himself, or even personnel reporting to the manager which would require the Court to undertake an analysis on the type of business of each of the thirty Plaintiffs in this case, the areas where such business took place, and the areas that were within Gilley's "management, operational or sales responsibility or within the responsibility of personnel directly reporting to" [12] Gilley. Gilley insists that the form Agreement could be used on any employee working in any of its locations, and if enforced, Brand and/or any of the Affiliate-Plaintiffs could require any employee to execute this Agreement regardless of the employee's specific job responsibilities and seek to enforce the Agreement against each employee as it applies to each individual situation in the event of an alleged breach, even despite the fact that the geographic reach of the corporate umbrella was and remains unknown. To summarize, Gilley asserts that the geographical limitation is nothing more than a generic provision prohibiting employment in areas where the employer does business which is contrary to the intent of § 921(c).

---

[12] R. #18-2, p. 3.

Brand maintains that the geographic limitation is valid and enforceable and that Louisiana law requires that the severability clause[13] of the present Agreement be applied by the court to **strike** the phrase "every county, city, municipality, parish or other locality within Canada or the United States, or any other country, including" from the defined Restricted Area applicable to the Non-Solicitation Agreement.[14] [15] However, Brand argues that the counties and parishes identified as within the restricted area are valid and enforceable. Brand relies on <u>Vartech Systems, Inc. v. Hayen,</u>[16] wherein the court held that "[t]he listing of all 64 parishes does not automatically render the specification overly broad."[17]

---

[13] The Agreement contains a Savings and Severability Clause which provides as follows:

> (a) Nothing contained in this Agreement shall be construed to require the commission of any act contrary to law, and whenever there is any conflict between any provision of this Agreement and any present or future status, law, government regulation or ordinance contrary to which the parties have no legal right to contract, the latter shall prevail, but in such event the provisions of this Agreement affected shall be curtailed and restricted only to the extent necessary to bring them within legal limits.
> (b) The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity and enforceability of the other provisions hereof. If any one or more of the provisions of this Agreement shall for any reason be held to be excessively broad as to time, duration, geographical scope, activity, or subject, each such provision shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with applicable law then in force. R. #18-2 § 10.

[14] R. # 18-2, p. 3 § 9(b)).

[15] Brand also relies on § 14 of the Agreement which provides that "each provision herein shall be interpreted in such manner as to be effective or valid under applicable law." R. #18-2.

[16] 951 So.2d 247, 258 (La.App. 1 Cir. 12/20/06)

[17] See also <u>Amcom of Louisiana, Inc. v. Battson</u>, 670 So.2d 1223 (La. 3/29/96) (applying severability provision in non-competition contract to enforce same); <u>Dixie Parking Serv., Inc. v. Hargrove,</u> 691 So.2d 1316, 1320 (La.App. 4 Cir. 3/26/97) (severability clause allowed court to delete nine extraneous parishes) <u>Arthur J. Gallagher & co. v. Babcock,</u> 703 F.3d 284 (5th Cir. 2012)(striking all but 9 of the 64 listed Louisiana parishes); <u>Class Action Claim Services, L.L.C. v. Clark</u>, 892 So.2d 595,600 (La.App. 5 Cir. 12/14/04); <u>Ticheli v. John H. Carter Co., Inc.</u> 996 So.2d 437, 441 (La. App. 2 Cir. 9/17/08)("Territory" upheld as "each of the parishes and/or counties listed in Exhibit III attached hereto for so long as Employer continues to carry on or engage in Employer's Business in such parish and/or county," listing all Louisiana parishes and a few counties of other states, with the record indicating the plaintiff did business there).

Brand further points out that the geographic scope goes beyond the requirements of § 921(C) because it limits the geographic area to the parishes that were within the management, operation or sales responsibility of Defendant or his direct reports during the last year of his employment.[18] Brand cites several cases, wherein the Louisiana Supreme Court has directed the courts to use savings and severability clauses agreed to by the parties interpreting non-competition contracts, and to strike overbroad language when doing so can result in an enforceable agreement.[19]

Brand suggests that to the extent the Court finds that the Agreement is overbroad due to the presence of the 29 Affiliate Plaintiffs, the Court can strike said Plaintiffs from the Agreement and enforce the Agreement only as to Brand. Gilley takes issues with Brand's reliance on SWAT 24 and argues that the case only dealt with former employees going on to start their own competing business with that of the former employer, not employees who went to work for other employers.

In Swat 24, the Louisiana Supreme Court granted certiorari to resolve a split among the circuits as to the proper interpretation of Louisiana Revised Statute 921(C) and the limited exception. Some circuits applied § 921(C) only to those agreements in which the employee agrees to refrain from carrying on or engaging in his own competing business to that of the former

---

[18] R. #18-2, p. 3 § 2(b)).
[19] See SWAT 24 Shreveport Bossier, Inc. v Bond, 808 So.2d 294, 308-9 (La. 6/29/01)( the court stated it acted consistently with parties' intent by relying on a severability clause to strike overbroad portions of non-competition agreement and render it enforceable) superseded by statute on other grounds, La.R.S. § 23:921(D), as recognized in Green Clinic L.L.C. v. Finley, 30 So.3d 1094 (La.App. 2 Cir. 1/27/10); Amcom, supra, 670 So.2d 1223 (reinstating trial court judgment that excised the overbroad part of a geographical limitation prohibiting competition "within a seventy-five (75) mile radius of Shreveport or Bossier City, Louisiana" while leaving the compliant part of the provisions which prohibited competition within "Shreveport or Bossier city, Louisiana, or in Caddo or Bossier Parishes, Louisiana" to render agreement enforceable).

employer, while other circuits   also applied the exception to agreements that prohibit employment as an employee in an existing competing business.[20] Resolving the split, the Louisiana Supreme Court ruled that § 921(C) only dealt with former employees going on to start their own competing business with that of the former employer.[21] However, the SWAT 24 court decided to sever the offending portions of the agreement instead of declaring it entirely null further noting "the state of uncertainty in the law of the issue that was created by the split in the circuits concerning the proper interpretation to be given to § 921(C)."[22]   As noted by Gilley, Swat 24 was legislatively overruled by Act 2003, No. 428 effective August 15, 2003.[23] Thus, the court's reasoning behind being "especially inclined" to sever the provisions was based upon an interpretation that has been legislatively overruled. Gilley argues that Louisiana courts may rely on Savings and Severability Clauses and strike overbroad language in an otherwise enforceable agreement noting that the enforceability of non-competition agreements in Louisiana is the exception, not the rule.[24]

Gilley agrees that Louisiana courts may rely on Savings and Severability clauses and have the authority to strike overbroad language in an otherwise enforceable agreement, however, that enforceability depends on the agreement meeting the exception(s) set forth in the statute. Additionally, "every court must strictly construe statutory exceptions, such as § 921(C) because of the 'longstanding public policy of this state disfavoring agreements not to compete.'"[25]

---

[20] See Swat, 808 So. 2d 294; Summit Institute for Pulmonary Medicine & Rehabilitation, Inc. v. Prouty, 691 So.2d 1384 (La.App. 2 Cir. 4/9/97).
[21] Swat 24, 808 So.2d at 307.
[22] Id. at 309.
[23] Green Clinic, L.L.C. v. Finley, 30 So.3d 1094, 1098 (La.App. 2 Cir. 1/27/10).
[24] La. R. S. § 23:921(A)(1); Kimball v. Anesthesia Specialists of Baton Rouge, Inc., 809 So.2d 405, 410 (La.App. 1 Cir. 9/28/1), writs denied, 811 So.2d 883 (La. 3/8/02).
[25] Louisiana Smoked Products, Inc. v. Savoie's Sausage & Food Products, 696 So.2d 1373, 1379 (La. 7/1/97).

Because non-compete agreements are in "derogation of the common right, they must be strictly construed against the party seeking their enforcement."[26] Thus, Gilley argues that the Agreement does not meet the limited exception(s) delineated by Louisiana Revised Statute 23:921 and therefore is unenforceable.

The issue for this Court to decide is whether or not the Agreement fits into an *exception* to the general rule that covenants not to compete agreements shall be null and void; said Agreement must strictly comply with the requirements contained in § 23:921(C). The parties generally agree that the Agreement cannot be saved through reformation. Brand, et al suggests that the Court strike the overbroad language and enforce the Agreement only as to the parishes and counties identified in the Agreement and strike all of the plaintiffs other than Brand. In other words, reform the Agreement. In order for the Agreement to comply with Louisiana law, the geographic term must substantially conform to the statute by identifying with reasonable certainty those areas in which the employer lawfully may prohibit competition.

As noted by Gilley, the same "reformation" was requested but failed, in <u>Team Environmental Services, Inc. v. Addison.</u>[27] In <u>Team Environmental</u>, the court was asked to reform a non-compete agreement which prohibited competition in a like business within a 200 mile radius of the employees' base of operations. The court cited numerous cases to support its

---

[26] <u>Hirsh v. Miller,</u> 249 La. 489, 187 So.2d 709, 714 (La. 1966); <u>Turner Professional Services, Ltd. v. Broussard</u>, 762 So.2d 184, 185 (La.App. 1 Cir. 5/12/00).
[27] 2 F.3d 124 (5th Cir. 1993).

decision not to reform the agreement: <u>Comet Indusries, Inc. v. Lawrence</u>,[28]; <u>Water Processing Technologies, Inc. v. Ridgeway</u>;[29] <u>Medivision, Inc. v. Germer</u>.[30]

The court finds that the Brand, et al Agreement is overly broad, and we also decline to reform the Agreement because it does not comply with the statute. The Agreement prohibits Mr. Gilley from being employed in over 100 parishes and counties wherein Brand, 29 Affiliate-Plaintiffs, and any successors (not yet know or identifiable) operate their businesses. Thus, we find that the Agreement is unenforceable on its face.

*Definition of a "business similar" to that of Brand, et al*

Mr. Gilley further maintains that the definition of a "business similar" is overly broad, ambiguous and fails to meet Louisiana law. First, Mr. Gilley remarks that the Agreement not only includes his former direct employer, Brand, but also Brand's predecessors, successors, parents, subsidiaries, divisions and affiliated and related companies. As noted by Mr. Gilley, this would potentially include any company, with no indication at the time Mr. Gilley signed the Agreement as to who the company was or where the companies may carry on a business. It could even include a company that did not exist at the time the Agreement was executed. Again, a non-compete agreement must identify with reasonable certainty those areas which the employer lawfully may prohibit competition. Mr. Gilley argues that the Agreement does not identify with

---

[28] 600 So.2d 85, 87 (La.App.),  <u>writ denied</u>, 604 So.2d 1002 (La. 1992)(the Second Circuit refused to reform and thereby validate a contract proscribing competition in the continental United States despite a savings and severability clause).

[29] 618 So.2d 533 (La.App. 4th Cir. 1993)(the Fourth Circuit declined to save by reformation a noncompetition clause in a distributorship agreement in which the geographical term was omitted, even though the limits could be inferred from the Distributorship agreement).

[30]  (La.App. 4 th Cir. 1993), <u>writ denied</u>, 619 So.2d 549 (La. 1993)(the Fourth Circuit invalidated an agreement prohibiting competitive employment within ten miles of any of the employer's offices in the Greater New Orleans area; because the agreement proscribed competition within ten miles of offices not established at the time the contract was executed, the employee could not determine at the time of execution the limits of the prohibition).

any type of certainty, much less reasonable certainty, where or what actions may fit into the statutory exception for enforceability.

Louisiana Revised Statute § 23:921(C) provides that the employee may agree with the employer "to refrain from carrying on or engaging in a business similar to that of the employer." Mr. Gilley relies on  Daiquiri's III on Bourbon, Ltd. v. Wandfluh,[31] wherein the company sought to enforce it non-compete agreement against a former employee. The agreement defined the "business similar" as "the sale of frozen drinks for consumption by the general public."[32]  The Louisiana Fifth Circuit Court of Appeal declared the agreement unenforceable because the language was overbroad reasoning that it would prevent the employee from working at "countless different businesses, stores and stands which sell all forms of 'frozen drinks' [… and] from entering into any business that sells any type of frozen drink which could include: yogurt, malts, or any number of products not sold by [employer]."[33]

Mr. Gilley further cites  LaFourche Speech & Language Services, Inc. v. Juckett,[34] wherein the court found a non-compete agreement to be void based upon the definition of the employer's business.  The pertinent provision included the following language:

> Upon the termination of this agreement, voluntary or otherwise, Employee [Juckett] shall, for a period of two (2) years from the date of termination, refrain from carrying on or engaging in a business similar to that of the employer [LSIS] within the Parishes of LaFourche, Terrebonne, Assumption, St. James and St. Mary.[35]

---

[31] 608 So.2d 222, 224-25 (La.App. 5th Cir. 1992)("[t]o comply with Louisiana law, a covenant-not-to compete agreement must specifically define the employer's business")

[32] Id. at 225.

[33] Id.

[34] 652 So.2d 679 (La.App. 1 Cir. 3/3/95) writ denied, 654 So.2d 351 (La. 5/12/95).

[35] Id. at 680.

Relying on the rationale in <u>Daiquiri III</u>, the court held that the agreement must specifically define the employer's business.[36] The nature of the employer's business was not described in the contract, but was identified in the petition as a "rehabilitation agency providing therapy services in the field of pathology, vocational rehabilitation, occupational therapy, physical therapy and social work services."[37]  The court concluded that even if it were to accept the allegations, the agreement would prohibit the employee form working  in "any of these areas, although she was hired by [employer] specifically as a speech therapist."[38]

The Brand, et al Agreement contains the following pertinent language:

> (a)  During employment with the Company and for a period of one (1) year after the voluntary or involuntary termination of Manager's employment with the Company for any reason, Manager shall not, directly or indirectly, whether as a partner, investor, employee, team member, consultant, creditor, shareholder or otherwise, ***carry on or engage in business similar to that of the Company***, such as by becoming employed by, assisting or engaging in bid development or customer solicitation for, promoting, participating, assisting or engaging in the organization, engineering, planning, consultation, ownership, financing, management, operation, work or control of any corporation, partnership, association, or other person or entity that directly competes with or is planning to directly compete with the Company (or otherwise provides products or services similar to those provided by the Company) in the Restricted Area (as defined herein) ***in the business of providing products and services of painting and industrial coating, metallizing, insulation and weatherproofing, asbestos and non-asbestos abatement, refractory services, concrete sealing, tank lining, carpentry and the manufacturing,***

---

[36] <u>Id.</u> at 681.
[37] <u>Id.</u>
[38] <u>Id.</u>

12

> *designing, marketing, renting, selling and assembling of scaffolding, temporary work platforms, and the designing, marketing, selling, renting, and assembling of concrete forming and shoring equipment and other construction-related products and services.[39]*

Mr. Gilley argues that while this Agreement does identify prohibited business activities, those activities are so broad that its application would restrict and prohibit Mr. Gilley from engaging in types of work that he did not perform while employed with Brand.

Brand, et al maintains that there is no such requirement for a valid non-competition agreement, and the agreement may restrict an employee from carrying on or engaging in a business similar to that of the employer, regardless of whether the employee performed work related to all of the employer's business activities.[40]

Mr. Gilley rebuts with  Gearheard v. DePuy Orthopaedics, Inc.[41]to posit that in order to reform the "business similar" and the "restricted areas" provisions in the Brand Agreement, the Court would have to perform an in-depth determination of the corporate structure of Brand and its affiliates — such as, what does each company do, where does each company do business, or attempt to do business, etc. — a daunting task at best and beyond the  authority of the Court. The Court agrees. Even though the Agreement attempts to define "business similar", the ambiguities

---

[39] R. #18-2, p. 124 (emphasis added).
[40] La. R.S. § 23:921(D) provides as follows:
> For the purposes of Subsections B and C of this Section, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.

[41] 1999 WL 638582, at *6 (E.D. La. Aug. 19, 1999).

created by the activities that prohibit and prevent Mr. Gilley from working are significant and more of an undertaking than this Court is willing to perform. Accordingly, we find that the "business similar" as defined in the Agreement is over broad as well as over reaching.

## CONCLUSION

For the reasons set forth above, the court finds that the Brand, et al non-compete agreement does not meet the requirements of Louisiana Revised Statute 9:23:921(C) and therefore is unenforceable on its face.  Accordingly, the motion for judgment on the pleadings will be granted and the instant lawsuit will be dismissed with prejudice.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this ___18th___ day of January, 2017.

_____
**JAMES T. TRIMBLE, JR.**
**UNITED STATES DISTRICT JUDGE**